IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CR-00336-F-1

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| RAINEY HOPE CROSBY, | ) |
| Defendant. | ) |

This matter is before the court on Rainey Hope Crosby's Motion to Suppress [DE-19].

The court conducted a suppression hearing on November 12, 2013. At the hearing, the

Government was represented by Assistant United States Attorney J. Gaston B. Williams. Crosby

was present and represented by Assistant Federal Public Defenders Devon L. Donahue and

Christopher J. Locascio. This case is presently scheduled for arraignment and trial during the

February 18, 2014 term of court.

Based on the evidence produced during the November 12, 2013 suppression hearing, the

court renders the following:

**FINDINGS OF FACT**

On February 4, 2011, around midnight, Officer Phil Burlingame, an officer with the

Fayetteville Police Department at the time, was on routine patrol. Officer Burlingame was

traveling in a marked police vehicle in a high-crime[1] area of Fayetteville, North Carolina near

Fayetteville State University.

In the area of Langdon Street and Seabrook Street, Officer Burlingame noticed a gold

---

[1]Although the Government did not submit any objective evidence to support its
contention that the area where the stop occurred was a high-crime area, both Officers Burlingame
and Michael testified that the area was known by them to be a high-crime area.

Dodge Stratus vehicle, which was operating with an extinguished license plate light. Officer Burlingame operated his lights and siren to initiate a stop, but the driver of the Stratus did not immediately pull over. The driver of Stratus continued down Langdon Street for approximately a quarter of a mile and then took a right turn onto Edgecombe Avenue. While following the Stratus, Officer Burlingame reported to dispatch that the vehicle he was attempting to stop was not responding. Officer Carl Michael, a member of the Fayetteville Police Department, was on patrol nearby and heard over his radio that Officer Burlingame was attempting to make a stop and that the vehicle was failing to stop.

Officer Michael arrived on the scene in a marked police vehicle about the time the Stratus and Officer Burlingame were turning right off Langdon Street onto Edgecombe Avenue. Officer Michael proceeded to make a left onto Edgecombe Avenue and followed in behind Officer Burlingame. The Stratus continued on Edgecombe Avenue for a short period of time. It appeared to Officer Burlingame that the driver of the Stratus was going to stop, but instead the vehicle took an abrupt turn from its lane of travel into the left lane of traffic before coming to a complete stop.

Officers Burlingame and Michael got out of their patrol vehicles to make contact with the occupants of the Stratus. Officer Burlingame approached the driver's side of the Stratus and made contact with the driver, Kenneth Burch. Officer Michael approached the passenger's side of the vehicle where Crosby[2] was seated. Officer Burlingame asked Burch what took him so long to stop, and Burch advised Officer Burlingame that he was looking for a place to stop his

---

[2]Crosby informed Officer Burlingame that he was "Eric Rainey Green." Months later, Officer Burlingame learned that this was an alias.

vehicle. Both Officer Burlingame and Officer Michael noted that Burch and Crosby kept their eyes straight ahead and were not talking very much. Officer Burlingame described Burch and Crosby's behavior as "nervous" and noted that they were not really wanting to speak with the officers.

Officer Burlingame had Burch step out of vehicle, and Officer Burlingame directed Officer Michael to have Crosby get out of the vehicle to conduct a frisk. Officer Michael pulled Crosby from the vehicle and directed Crosby to put his hands on top of the vehicle. Crosby removed his hands from the roof of the car and put them in his jacket pockets two to three times while Officer Michael was attempting to conduct a frisk on him. Crosby then turned to the left and took off running. Officer Michael chased after Crosby and grabbed him by the black leather jacket he was wearing. Crosby pulled out of the jacket[3] and continued running. The jacket came off in Officer Michael's hands and fell to the ground. Crosby tried to dive into some bushes, but he got stuck and there was also a chain link fence which precluded him from escaping. Crosby threw up his arms in surrender and complied with Officer Michael's orders to put his hands behind his back so that he could be handcuffed.

## DISCUSSION

In his motion, Crosby concedes that the extinguished license plate light justified Officer Burlingame in stopping the vehicle in which he was a passenger. Crosby argues, however, that Officers Burlingame and Michael lacked reasonable, articulable suspicion that he was engaged in illegal activity when they forced him out of the car, attempted a pat-down, and chased him when

---

[3]Officer Burlingame testified that after Officer Michael caught Crosby, Officer Burlingame gathered Crosby's jacket and discovered a loaded Bersa handgun in the pocket.

3

he fled the scene. Crosby concludes that the firearm, a .380 caliber Bersa, and ammunition, which were seized as the byproduct of the unlawful search and seizure, must be suppressed.

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. Amend. IV. A seizure warranting Fourth Amendment protection occurs when under the totality of the circumstances a reasonable person would not feel free to leave or otherwise terminate an encounter with the police. *Florida v. Bostick*, 501 U.S. 429, 438 (1991). A seizure generally requires either the use of physical force or, absent the use of physical force, a submission to an officer's assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). The standard of "reasonableness" in a seizure case is typically satisfied by a showing that the police had probable cause to believe that the individual seized was involved in criminal activity. *Dunaway v. New York*, 442 U.S. 200, 213-14 (1979). The Government bears the burden of establishing that a warrantless seizure is reasonable. *See Welsh v. Wisconsin*, 466 U.S. 740, 749-50 (1984).

As noted, Crosby concedes that Officer Burlingame legally stopped the vehicle in which he was a passenger. The court agrees and finds that Officer Burlingame legally stopped the vehicle Crosby was riding in for having an extinguished license plate light. *See Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.")

The court concludes that Crosby was "seized" when Officer Michael pulled him from the vehicle. The court finds that it was a seizure because Officer Michael exercised physical force over Crosby when he pulled him from the vehicle and a reasonable person in Crosby's position would not have felt "free to leave" at that time or to otherwise terminate the encounter.

4

Accordingly, Officer Michael's action in pulling Crosby from the vehicle effected a seizure of Crosby, within the meaning of the Fourth Amendment.

The court will now turn to consider whether Crosby's seizure violated his rights under the Fourth Amendment. The court finds that the Government has neither attempted to argue nor has it shown from the evidence presented to the court during the November 12, 2013 suppression hearing that Officer Michael had probable cause to believe that Crosby was involved in criminal activity that warranted him being pulled from the vehicle. Therefore, the court finds that Crosby's seizure was not reasonable under the Fourth Amendment.

Having concluded that Crosby's seizure was unreasonable under the Fourth Amendment, the court must now determine whether the discovery of the firearm and ammunition must be suppressed. The exclusionary rule is "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States,* — U.S. ——, 131 S.Ct. 2419, 2423 (2011). Its "sole purpose, [the Supreme Court has] repeatedly held, is to deter future Fourth Amendment violations." *Id.* at 2426. "When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* at 2427 (internal quotations omitted).

In this case, Officer Michael acted with reckless disregard for Crosby's Fourth Amendment rights when he forcibly removed him from the vehicle without probable cause to believe that he was involved in criminal activity. The court finds that the deterrent value of the exclusionary rule in this case outweighs the resulting social costs. The court further finds that the firearm and ammunition were products of the illegal seizure. For these reasons, the firearm and

5

ammunition must be suppressed.

## SUMMARY

In summary, and for the foregoing reasons, Crosby's Motion to Suppress [DE-19] is

ALLOWED.

SO ORDERED.

This, the ⫽D day of December, 2013.

James C. Fox

JAMES C. FOX
Senior United States District Judge

6